UNIVERSAL CITY STUDIOS, INC., a corporation, dba Universal Television, et al., Plaintiffs,

v.

SONY CORPORATION OF AMERICA, a corporation, et al., Defendants.

No. CV 76–3520–F.

United States District Court, C. D. California.

March 28, 1977.

Stephen A. Kroft, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for plaintiffs.

Dean C. Dunlavey, Donald E. Sloan, Gibson, Dunn & Crutcher, Los Angeles, Cal., Ambrose Doskow, Rosenman Colin Freund Lewis & Cohen, New York City, for defendants Sony Corp. of America, Sony Corp., and Doyle Dane Bernbach, Inc.

Marshall A. Rutter, Warren G. Greene, Collins, Gregory & Rutter, Inc., Los Angeles, Cal., for defendants Carter Hawley Hale Stores, Inc., Associated Dry Goods Corp., Federated Dept. Stores, Inc., and Henry's Camera Corp.

## MEMORANDUM OPINION

FERGUSON, District Judge.

This action arises out of the marketing of a new videotape recording machine called the Betamax. Plaintiffs, Universal City Studios, Inc. and Walt Disney Productions, allege that the Betamax is designed and distributed for the sole purpose of inducing purchasers of the machine to record television shows, including movies that they have produced. Defendants include the manufacturer (The Sony Corporation), the distributor (Sony Corporation of America), various retailers (Carter Hawley Hale Stores, Inc., Doyle Dane Bernbach, Inc., J. W. Robinson Co., Bullock's Inc., and Henry's Camera Corp.), and a purchaser of the device (William Griffiths). The twelve count complaint seeks an accounting, damages and injunctive and declaratory relief for copyright infringement, unfair competition under both state and federal law, and intentional interference with contractual and advantageous business relationships under state law.

Defendants have moved to dismiss counts VII and VIII of the complaint which purport to state claims against the manufacturing, distributing and retailing defendants under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This statute provides that

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Plaintiffs allege that defendants have failed to advise the public that use of the Betamax to copy copyrighted programs off the air constitutes copyright infringement and that this failure has caused the public to be confused and misled into believing that copying of television programs, including those of the plaintiffs, is done with the permission of the copyright owners and that it is otherwise legal. Defendants argue that such conduct is not actionable under this federal statute.

Plaintiffs' allegations are susceptible to consideration from two analytical viewpoints. First, they contend that although on a literal level defendants' advertisements make the limited representation that the Betamax has the capacity to copy tele-

vised programs, defendants have at the same time implied that such copying (1) is with their consent, and (2) is legal. Without doubt, plaintiffs' allegations fail to bring this claim within the line of cases recognizing a § 1125(a) cause of action where a defendant uses a company or product name or a characterization in the course of its advertising campaign that is so similar to that used by plaintiff that public confusion concerning the source or sponsorship of defendant's product is created (*see, e. g., H. A. Friend & Co. v. Friend & Co.,* 416 F.2d 546 (9th Cir. 1969); *Geisel v. Poynter Products, Inc.,* 283 F.Supp. 261 (S.D.N.Y.1968)). No such "passing off" has occurred here. Rather, plaintiffs rely on statements in defendants' advertising which refer to "your favorite Monday night 9 o'clock show" or to a hypothetical 9 p. m. movie. They argue that since movies which they have produced may run in the 9 o'clock time slot, defendants have by such advertising suggested that they have consented to the use of the Betamax to copy such programs. Consent is not the same as sponsorship, however, and there cannot be found in these references a false representation of the Betamax's source or origin. Rather, plaintiffs' reliance on the specific mention of a 9 p. m. movie proves no more than the general claim that defendants have implied that use of the Betamax to copy television programs is with the consent of the copyright owners or is otherwise legal.

Plaintiffs would, by analogy to another section of the federal trademark law, 15 U.S.C. § 1114, ask whether there is public confusion in order to determine whether defendants' advertising statements do indeed carry the implication that use of the Betamax is legal. They then argue that since public confusion is a question of fact, it would be improper to dispose of their Lanham Act claims on a motion to dismiss. § 1125(a) does not use the language "likely to cause confusion," however, and the importation of that standard here would be without the clear frame of reference provided by § 1114. There, the phrase is used to identify the bounds beyond which imitation of a trademark may not go; its application in the circumstances here presented would be more far reaching, for it could broaden the inquiry beyond the question of whether a representation had been implicitly made to include consideration of a variety of commonly held assumptions. It would be too easy under this rubric to confuse the issue of whether the public expects that most goods advertised and sold have a legal use, are safe, and have been designed to last at least a reasonable length of time, with the question of whether such representations are implicit in the advertising statements made by defendants.

Instead, this question must be considered using more traditional standards. It is true that on a motion to dismiss a complaint must be construed in the light most favorable to a plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Nevertheless, conclusions of law and unwarranted deductions of fact may not be drawn from the facts alleged in order to preclude dismissal. *Ryan v. Scoggin,* 245 F.2d 54 (10th Cir. 1957). Some inferences simply cannot be supported, just as some showings are either so strong or so lacking in force that a countervailing jury verdict cannot be allowed to stand. Here, the court simply cannot credit as reasonable the inference plaintiffs claim is implicit in defendants' ads. To say that "this product is capable of copying television shows" is simply not the same as saying "when you use this product to copy television shows you are acting legally." In the absence of any such representation, plaintiffs can only succeed under a second line of analysis wherein they contend that failure to disclose the possible legal perils of such use is itself actionable.

This, indeed, is the heart of plaintiffs' claim, the cornerstone of the allegations they have pleaded in counts VII and VIII of the complaint. Plaintiffs suggested in oral argument that defendants themselves have perceived a need for disclosure since they have included a warning concerning copyright infringement in the written materials given Betamax buyers ("Television programs, films, videotapes and other materi-

als may be copyrighted. Unauthorized recording of such materials may be contrary to the provisions of the United States copyright laws."). This is beside the point. The inclusion of this statement does not by juxtaposition somehow alter the implications of the statement that Betamax is capable of recording television shows. Nor is it itself a false representation, for no more authoritative characterization is warranted until this lawsuit is decided; to say that use either is or is not illegal is simply not yet true. The quoted disclaimer merely illustrates the kind of language plaintiffs assert that defendants could and should have used in the general advertising of the Betamax.

In support of their argument, plaintiffs cite three recent cases which state that under certain circumstances, clarification in the form of an additional statement is necessary in order for an advertiser to escape liability under § 1125(a). See *Gilliam v. American Broadcasting Companies, Inc.,* 538 F.2d 14, 24 (2d Cir. 1976) (representation that program had been written by Monty Python when substantial editing had been done on the original material stated a cause of action under § 1125(a) ); *CBS, Inc. v. Gusto Records, Inc.,* 403 F.Supp. 447 (M.D.Tenn.1974) (use of recent picture of Charlie Rich on album of songs recorded 10 to 15 years ago held actionable); *Rich v. RCA Corp.,* 390 F.Supp. 530 (S.D.N.Y.1975) (same). See also *Skil Corp. v. Rockwell International Corp.,* 375 F.Supp. 777, 783 n.11 (N.D.Ill.1974). In each of these cases, however, a false inference had been created, *i. e.,* that the material contained in the television show was as Monty Python had conceived and executed it, and that the songs on the Rich albums were recent, rather than of older vintage. Thus, where words or other symbols (such as pictures) tend falsely to describe a product, the resulting Lanham Act violation can only be cured by a statement correcting that misapprehension. That is not to say, however, that where no inference beyond the face of the representation is created, a disclaimer of possible false expectations independently held by the public is necessary under this statute, nor that the omission of information

tion perhaps relevant to a buyer is itself actionable.

Defendants cite *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.,* 499 F.2d 232 (2d Cir. 1974), as controlling, but that case too lacks persuasive power on the facts here presented. There, a seller of cans of damaged tobacco failed to require as a condition of sale that the buyer label them as water damaged before reselling them to the public. As a result, the seller's reputation as one who marketed good tobacco was allegedly injured. The court rejected failure to disclose as a ground for Lanham Act liability, but did so largely because it viewed the problem as one that should have been resolved as part of the contract negotiations between the merchants, rather than in a later suit of this sort.

Rather than looking to case law, therefore, it is necessary to look to the statute. It is hard to see how a simple failure to disclose can be brought within its terms. No reference to omissions of material fact or obligation to disclose such as is found in other federal statutes (*e. g.* 15 U.S.C. § 77*l*) appears. The key language seems to be "false description," false "representation," and false "designation of origin." The absence of any statement is neither "false" nor a "representation." And it is difficult to see where such a disclosure requirement, if implied, would end, for no limits on the extent and nature of that disclosure can be readily deduced. Whether the cause of action created by § 1125(a) is rooted in the limited context of "passing off" (*Chamberlain v. Columbia Pictures Corp.,* 186 F.2d 923 (9th Cir. 1951) ), or the somewhat broader realm of "false advertising" (*L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649 (3d Cir. 1954) ), it cannot be said that as conceived or enacted the statute was designed to make all failures to disclose actionable.

To so recognize the strictures of this rather limited right of action is not, of course, to express any view on the viability of plaintiffs' pendent unfair competition claims. At this point, it can only be said

that the allegations contained in counts VII and VIII fail to fall within the rather particularized provisions of § 43(a) of the Lanham Act. Defendants' motion is granted. Counts VII and VIII are hereby dismissed.