George **BENSON**, Plaintiff,

v.

**PAUL WINLEY RECORD SALES CORP. and Paul Winley, doing business as Paul Winley's Record Shop**, Defendants.

No. 78 Civ. 2341.

United States District Court, S. D. New York.

June 19, 1978.

Kaye, Scholer, Fierman, Hays & Handler by David Goldberg, Lynn S. Fruchter, Geoffrey D. Menin, New York City, for plaintiff.

Chance & Schofield by William C. Chance, Jr., New York City, for defendants.

## OPINION AND ORDER

OWEN, District Judge.

Guitarist George Benson is an internationally acclaimed jazz musician. After twenty-seven years of effort, he is today the top jazz guitarist in America. Three of his most recent records—with musicians under his direction—have sold over one million copies, and one is the largest-selling jazz album in record history. Years ago, when an unknown, Benson was hired as one of several members of a jazz combo to record music composed and directed by others. Benson, as a mere member of the group, played what was asked of him, controlling neither the musical style, nor the contents, nor the production of the record thereafter released.

Defendants Paul Winley—the composer at this old recording session—and Paul Winley Sales Corporation have now re-mixed and marketed this material as a collection, and titled it "George Benson, Erotic Moods." The front cover of the record jacket features a large, recent photograph of Benson and prominently displays his name alone in bold letters. Beneath the title is the caption "X Rated LP." Defendants have altered the contents of the original recording, accenting Benson's guitar track, and have "over-dubbed" the sexually suggestive moaning of a woman on one selection called "Sweet Taste of Love." Defendants have also used Benson's name and picture in publicity for the album. One advertisement features the record jacket and the phrase "XXX Rated *new* LP and single" (emphasis supplied). Benson moves for a preliminary injunction restraining defendants from manufacturing and selling the album as it is now packaged and advertised.

To merit injunctive relief, it suffices for plaintiff to make a clear showing of probable success on the merits and possible irreparable injury. *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973). Both requirements are met. First, defendants' jacket design and album advertisements are false descriptions and representations in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).* This provision extends

---

* § 43(a) of the Lanham Act provides in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or serv-

to misrepresentations in advertising as well as labeling of products and services in commerce. *Yameta Co. v. Capitol Records, Inc.,* 279 F.Supp. 582, 586 (S.D.N.Y.), *vacated on other grounds,* 393 F.2d 91 (2d Cir. 1968). To demonstrate probability of success on the merits in an action under § 43(a), plaintiff need merely show the likelihood of consumer deception. *Rich v. RCA Corp.,* 390 F.Supp. 530, 531 (S.D.N.Y.1975). Defendants have more than likely misled the public—as they doubtless intended—into believing that their album contains recent recordings by George Benson as principal performer. The prominent use of Benson's name and picture on the album and in the advertisements creates the false impression that Benson was responsible for the contents of the album. The recent jacket photograph and the promotion claims of "new" material deceptively portray the album as a current release. Defendants nowhere indicate that the performances are from five to more than twelve years old, and that Benson was a mere player.

Secondly, defendants' misrepresentations can cause irreparable injury to Benson's professional and personal reputation. "Erotic Moods," while of quality, is much less sophisticated in style than that which has engendered Benson's fame. People induced to buy the album, lured by the expectation of enjoying Benson's unique flavor, may be disappointed in the style and contents, and thus be deterred from purchasing future releases with Benson as star performer. The public may further associate Benson with the blatant sexual appeal of the "Erotic Moods" album and mistakenly believe that Benson endorses "X Rated" material. Thus defendants, attempting to capitalize upon Benson's phenomenal success, have deceitfully packaged and advertised a product that is anathema to Benson, and a threat to his professional standing and personal stature.

*CBS, Inc. v. Gusto Records, Inc.,* 403 F.Supp. 447 (M.D.Tenn.1974) furnishes con-

siderable guidance although it is clearly distinguishable. There the court declined to enjoin the selling of an album bearing a current likeness of plaintiff Charlie Rich, but containing songs just as they had been recorded by Rich ten to fifteen years before his current success. The court, however, ordered that a decal be affixed to each album to clarify its contents, thus alleviating any harm that might be caused by defendant's violation of § 43(a) of the Lanham Act. The deception is much greater here. Rich in fact was the principal performer in the older recordings and exercised technical and stylistic control over the production of his work. Benson, however, is made to appear as the central and controlling artist when in fact he was not. An explanatory label placed on each "Erotic Moods" album would be inadequate to give Benson the relief to which he is entitled since both the record jackets and the labels on the records themselves contain extensive false information.

Plaintiff's motion for a preliminary injunction is granted.

So Ordered.

ices, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.