847 F.2d 1403
 57 USLW 2028, 7 U.S.P.Q.2d 1249
 Robert M. LAMOTHE; Ronald D. Jones, Plaintiffs-Appellants,
v.
ATLANTIC RECORDING CORPORATION; Robinson L. Crosby; Juan
Croucier; Marshall Berle; Time Coast Music; Ratt Music;
Chappell Music Company; Rightsong Music, Inc.; Stephen
Pearcy; Warren de Martini; Robert Blotzer; WEA
International, Inc., Defendants-Appellees.
 No. 87-5785.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1988.
 Decided June 1, 1988.
As Amended July 7, 1988.
 
 George Waldstein, Sherin and Lodgen, Los Angeles, Cal., for plaintiffs-appellants.
 Mark D. Passin, Engel & Engel, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, POOLE and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Robert M. Lamothe and Ronald D. Jones appeal from the district court's grant of summary judgment in favor of Robinson L. Crosby and Juan Croucier, and Atlantic Recording Corp., Marshall Berle, Time Coast Music, Ratt Music, Chappell Music Co., Rightsong Music, Inc., Stephen Pearcy, Warren de Martini, Robert Blotzer, and WEA International, Inc. The district court held that summary judgment was appropriate because Lamothe and Jones failed to establish that section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), provides relief to co-authors whose names have been omitted from a record album cover and sheet music featuring the co-authored compositions. Because the court concluded that no federal cause of action existed, the court also dismissed the plaintiffs' pendent state law claims for an accounting, defamation, and misattribution of authorship.
 
 
 2
 We have jurisdiction of this appeal under 28 U.S.C. Sec. 1291, and we reverse.
 
 
 3
 * STANDARD OF REVIEW
 
 
 4
 We review a grant of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). "Summary judgment is proper if, after viewing the evidence in the light most favorable to the party opposing the motion, the movant is clearly entitled to prevail as a matter of law." Deukmejian v. United States Postal Serv., 734 F.2d 460, 462 (9th Cir.1984). "The moving party is 'entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ).
 
 II
 FACTS
 
 5
 Viewing the evidence in the light most favorable to Lamothe and Jones, the nonmoving parties, the facts pertinent to this appeal are that Lamothe, Jones and Crosby are coauthors of two songs entitled "Scene of the Crime," and "I'm Insane." These works were composed while Lamothe, Jones and Crosby were members of a band called Mac Meda. After Mac Meda disbanded, Crosby joined another musical group called RATT. While Crosby was a member of RATT, he and Juan Croucier licensed the songs at issue to Time Coast Music, which in turn sub-licensed the songs to other of the defendants in this case, including Atlantic Recording. In 1984, Atlantic released an album by the group RATT entitled "Out of the Cellar," which included the recordings of the songs "Scene of the Crime" and "I'm Insane."[1] Because of the popularity of this album, the music and lyrics for all compositions on the album were released in sheet music form by the sub-licensee Chappell Music Co. In both versions (album and sheet music), authorship of the music and lyrics of "I'm Insane" was attributed solely to Robinson Crosby and the music and lyrics of "Scene of the Crime" were attributed to Robinson Crosby and Juan Croucier. Neither Robert Lamothe nor Ronald Jones received credit for their roles in the writing of these songs.
 
 III
 ANALYSIS
 
 6
 The principal issue on appeal is whether Lamothe and Jones have stated a claim under section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a), which provides in pertinent part:
 
 
 7
 Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of such false description or representation.
 
 
 8
 Id. The Lanham Act's prohibition of false designations or representations reaches either goods or services sold in interstate commerce. Smith v. Montoro, 648 F.2d 602, 605 (9th Cir.1981). It has been applied to motion picture representations, id., and the defendants cite no case holding that it does not similarly reach musical compositions. We also note that "[t]o recover for a violation of [section 43(a) ] it is not necessary that a mark or trade-mark be registered. The dispositive question is whether the party has a reasonable interest to be protected against false advertising." Id. (quoting New West Corp. v. NYM Co. of Cal., 595 F.2d 1194, 1198 (9th Cir.1979) ); see also Smith, 648 F.2d at 605 n. 3 (collecting cases describing reach of section 43(a)). Finally, we recently have made clear that in cases involving false designation, the actionable "conduct must not only be unfair but must in some discernable way be competitive." Halicki v. United Artists Communications, Inc., 812 F.2d 1213, 1214 (9th Cir.1987). In the present case, the plaintiffs clearly have a legitimate interest in protecting their work from being falsely designated as the creation of another. The defendants do not dispute that the plaintiffs and Crosby are competitors in the relevant market. Having determined that the plaintiffs have an interest protected by the Lanham Act, we turn our attention to whether the defendants' conduct in this case constitutes a violation of section 43(a).
 
 1. Prohibited Conduct Under Section 43(a)
 
 9
 The Lanham Act applies to two different types of unfair competition in interstate commerce. The first is "palming off" or "passing off," which involves selling a good or service of one person's creation under the name or mark of another. Smith v. Montoro, 648 F.2d 602, 604 (9th Cir.1981). Section 43(a) also reaches false advertising about the goods or services of the advertiser. U-Haul Int'l, Inc. v. Jartran, Inc., 681 F.2d 1159, 1160 (9th Cir.1982). Because we conclude that Lamothe and Jones, for purposes of surviving a motion for summary judgment, have produced evidence satisfying the elements of a "reverse passing off" claim, we need not decide whether the defendants' actions also constitute false advertising.
 
 2. Passing Off
 
 10
 The leading case in this circuit discussing the "passing off" doctrine embodied in section 43(a) is Smith v. Montoro, 648 F.2d 602 (9th Cir.1981). In that case, an actor named Paul Smith had contracted to star in a film. Smith's contract provided that he would receive star billing in the screen credits and any advertising associated with the distribution of the film. A licensee of the production company subsequently removed Smith's name from the screen credits and advertising materials and substituted the name of another actor, "Bob Spencer." Id. at 603. Smith sued the production company and its licensee, alleging a violation of the Lanham Act. The district court dismissed the complaint because it did not allege a practice "in the nature of, or economically equivalent to, palming off ... and/or misuse of trademarks and trade names." Id. at 604. We disagreed and reversed the case and remanded it to the district court to reinstate Smith's complaint.
 
 
 11
 We began our analysis in Smith by defining "passing off" as the practice of selling one person's product or service under the name or mark of another. Id. Passing off may be either "express" or "implied." Id. Express passing off occurs when a business labels its goods or services with a mark identical to that of another enterprise, or otherwise expressly misrepresents the origin of the goods or services. Id. Implied passing off involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor. Id.
 
 
 12
 In Smith, we further explained that section 43(a) also encompasses merchandising "practices or conduct 'economically equivalent' to palming off." Id. at 605. Among those practices is "reverse passing off," which may be either "express" or "implied." Express reverse passing off is "accomplished ... when the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer." Id. Implied reverse passing off is accomplished simply by removing or obliterating the name of the source and then selling the product in an unbranded state. Id.
 
 
 13
 We concluded in Smith that by deleting Smith's name from the film and advertising materials and substituting the name "Bob Spencer," the defendants had engaged in express reverse passing off. We explained that
 
 
 14
 [a]s a matter of policy, such conduct, like traditional palming off, is wrongful because it involves an attempt to misappropriate or profit from another's talents and workmanship. Moreover, in reverse palming off cases, the originator of the misidentified product is involuntarily deprived of the advertising value of [his] name and the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product. The ultimate purchaser (or viewer) is also deprived of knowing the true source of the product and may even be deceived into believing that it comes from a different source.
 
 
 15
 Id. at 607 (citations omitted). In the present case, taking the allegations of the complaint as true, the defendants engaged in express reverse palming off, by which they deprived Lamothe and Jones of recognition and profits from the release of the two songs that were their due.
 
 
 16
 The defendants' argument on appeal, reduced to its simplest form, is that there can be no express reverse passing off when the designation of a product's source is partially correct. Defendants argue that the failure to attribute authorship to Lamothe and Jones is a "mere omission," which is not actionable under section 43(a). We disagree. We do not read the "falsity" requirement in origination cases so narrowly that a partially accurate designation of origin, which obscures the contribution of another to the final product, is a permissible form of competition.[2]
 
 
 17
 The defendants place great emphasis on Universal City Studios, Inc. v. Sony Corp. of America, 429 F.Supp. 407 (C.D.Cal.1977), which stated that "[i]t is hard to see how a simple failure to disclose can be brought within [section 43(a)'s] terms." Id. at 410. This statement, however, must be read in the context of that case, which involved a claim by two film studios against the manufacturer of a video recording machine. The film studios argued that Sony's failure to disclose to consumers that videotaping copyrighted works from television might violate federal copyright law constituted a section 43(a) claim. The district court disagreed because the advertising in that case was not false. See id. at 409. To the extent that the Sony opinion addresses passing off claims, its conclusions are dicta. Moreover, the ultimate conclusion reached in Sony was that "it cannot be said that as conceived or enacted [section 43(a) ] was designed to make all failures to disclose actionable." Id. (emphasis added).
 
 
 18
 In the present case, the defendants unilaterally decided to attribute authorship to less than all of the joint authors of the musical compositions. Had the defendants decided to attribute authorship to a fictitious person, to the group "RATT," or to some other person, this would be a false designation of origin. It seems to us no less "false" to attribute authorship to only one of several co-authors. Cf. Gilliam v. American Broadcasting Co.'s, 538 F.2d 14, 24 (2d Cir.1976) (stating in dicta that broadcasting heavily edited version of "Monty Python's Flying Circus" without appropriate disclaimer that authors had not approved editing amounted to violation of section 43(a) ); id. at 26 (Gurfein, J., concurring) ("So long as it is made clear that the ABC version is not approved by the Monty Python group, there is no misdescription of origin."). The policies we identified in Smith, namely, ensuring that the producer of a good or service receives appropriate recognition and that the consuming public receives full information about the origin of the good, apply with equal force here. An incomplete designation of the source of the good or service is no less misleading because it is partially correct. Misbranding a product to only partially identify its source is the economic equivalent of passing off one person's product under the name or mark of another. And the Smith case makes clear that in assessing section 43(a) claims, courts are to consider whether the challenged "practices or conduct [are] 'economically equivalent' to palming off." Smith, 648 F.2d at 605.
 
 3. Liability of Licensees
 
 19
 Atlantic Recording and the other licensees or sublicensees of Crosby and Croucier argue that even if Lamothe and Jones have stated a section 43(a) claim, they cannot be held liable because they are licensees. We disagree. Some of the licensees may have been involved in affixing an incomplete designation of authorship. These licensees would be liable under section 43(a) regardless of knowledge. See 15 U.S.C. Sec. 1125(a). The express language of section 43(a) also imposes liability upon those who "with knowledge of the falsity of such designation of origin ... cause or procure the same to be transported or used in commerce." Id. The licensees have cited no case holding that a licensee is exempt from the prohibitions of the Lanham Act. Whether the licensees affixed the incomplete authorship or had knowledge of the false designation of origin are matters best left to the trier of fact to resolve.
 
 IV
 CONCLUSION
 
 20
 Because we conclude that summary judgment was inappropriate, we reverse the decision of the district court and remand the case with instructions to reinstate Lamothe's and Jones's federal causes of action. We also instruct the district court to consider reinstating the plaintiffs' pendent state claims, which the district court dismissed for lack of jurisdiction when it dismissed the Lanham Act claim. See Simon Oil Co. v. Norman, 789 F.2d 780, 782 (9th Cir.1986).
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 [1]
 The plaintiffs do not dispute that the recorded versions of "I'm Insane" and "Scene of the Crime" are not identical to the compositions that they helped to create. But the defendants do not allege that the recorded versions of these songs are so substantially different from the versions co-authored by Lamothe and Jones that they may not be considered the same product. We express no opinion whether the Lanham Act incorporates a "substantial similarity" requirement. See Litchfield v. Spielberg, 736 F.2d 1352, 1358 (9th Cir.1984), cert. denied, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). For purposes of this appeal we assume, viewing the evidence in the light most favorable to the plaintiffs, that the recorded versions of the songs at issue differ only in minor details from the original co-authored compositions
 
 
 [2]
 Several of the cases relied on by the defendants are not applicable to this case. In those cases, removal of identifying letters or symbols from the product of another manufacturer has been said not to violate the Lanham Act. See, e.g., CCS Communications Control, Inc. v. Law Enforcement Assoc., Inc., 628 F.Supp. 1457, 1460 (S.D.N.Y.1986) (stating that "removal of [product's] identifying letters and its resale is not a violation of [section 43(a) ] because it 'makes actionable the application of a 'false designation of origin,' not the removal of a true designation,' " quoting Pic Design Corp. v. Sterling Precision Corp., 231 F.Supp. 106, 115 (S.D.N.Y.1964)). In this case, however, the defendants did not simply remove all trace of the source of the product, which might itself be actionable as implied reverse passing off. See Smith, 648 F.2d at 605-06 & n. 5. Rather, the defendants applied an incomplete designation of the songs' source. Thus, the implied reverse passing off cases on which the defendants seek to rely are not applicable