Northwestern's motion for *quia timet* or exoneration relief is denied.

### III. Cross–Motions for Reconsideration

Both Northwestern and the Abish Investors move for reconsideration of this Court's March 27, 1990 Opinion. We grant their motions. Upon reconsideration, we adhere to our prior decision except insofar as it is inconsistent with today's decision. Specifically, we decide today that even if the waiver of defenses provisions in the surety Bonds are void, the investors do not have any valid defenses to payment of their Notes. *See supra* at 16ff. Therefore, even if Northwestern did not disclose to the investors that the surety Bonds contained such waivers, that nondisclosure did not injure the investors. Northwestern therefore argues that the investors have not stated a claim for rescission of their indemnity agreements under section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc(b) (1981). However, as our prior Opinion noted, if the indemnity agreements are treated as part of a single contract with the other documents in the PPM, then genuine disputes over material facts still exist and preclude granting Northwestern summary judgment on the investors' section 29(b) claims. *See In re Gas Reclamation, Inc. Sec. Litig.*, 733 F.Supp. at 719–20.

We have also considered *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926 (S.D.N.Y.1989) and adhere to our prior decision granting Northwestern summary judgment on the investors' claims for violations of section 12 of the Securities Act of 1933, 15 U.S.C.A. § 77*l*.

### IV. Summary

The Banks' motions for partial summary judgment are granted. Northwestern's motion for *quia timet* or exoneration relief is denied. Northwestern's and the Abish

Investors' cross-motions for reconsideration are granted. Upon reconsideration, we adhere to our prior decision, *In re Gas Reclamation, Inc. Sec. Litig.*, 733 F.Supp. 713 (S.D.N.Y.1990), except to the extent it is inconsistent with today's Opinion.

Pending before this Court are Northwestern's objections to Magistrate Bernikow's Report and Recommendation dated April 16, 1990 with respect to Northwestern's motion to dismiss the Banks' punitive damages claims and Northwestern's motion in the alternative for summary judgment on those claims. The parties are directed to submit letters to the Court by July 23, 1990 briefly explaining any other outstanding pre-trial matters. The plaintiffs are directed to notify all parties that this Court will hold a conference on September 12, 1990 at 4:30 p.m. in Courtroom 601.

SO ORDERED.

**Minoru MORITA, Plaintiff,**

v.

**OMNI PUBLICATIONS INTERNATIONAL, LTD., Kan Photography Incorporated, and Kan Nakai, Defendants.**

**No. 89 Civ. 3262 (MGC).**

United States District Court,
S.D. New York.

July 16, 1990.

Bressler & Kruger, New York City by James Lorin Silverberg, for plaintiff.

Baker & Friedman, New York City, by Ben C. Friedman, for defendants Kan Photography and Kan Nakai.

Lankenau & Bickford by Laura R. Handman, Laurence B. Sutter, Associate Counsel, Publications Omni Publications Intern. Ltd., New York City, for defendant Omni Publications Intern.

## OPINION AND ORDER

CEDARBAUM, District Judge.

This is a copyright infringement action brought by Minoru Morita against Omni Publications International, Ltd., Kan Photography Inc. and Kan Nakai. The complaint also asserts claims under Section 43(a) of the Lanham Act and Section 14.03 of the New York Arts and Cultural Affairs Law. The parties have cross-moved for summary judgment on liability. For the reasons discussed below, defendants' motion is granted in part and denied in part and plaintiff's motion is denied.

## UNDISPUTED FACTS

In early 1985 Minoru Morita, a graphic artist, designed a poster for The American Peace Posters Exhibition, a project sponsored by the Shoshin Society to commemorate the fortieth anniversary of the bombing of Hiroshima.

Morita commissioned glass sculptor Milon Townsend to create a glass "sculpture" of a shattered dove to be photographed for the poster. This "sculpture" is "constructed in four pieces—the two wings, the tail and torso and the head ... [R]emnants from the glass cutting [are used] to give the appearance of the peace dove shattering in flight." (Morita Aff., July 7, 1989, ¶ 13.) Morita has the pieces of the "sculpture."

Kan Nakai, a well known photographer, photographed the "sculpture" and a pool of "blood" for the poster. Under his arrangement with Morita, Kan donated his services, but was reimbursed by Morita for his out-of-pocket expenses and received credit as the photographer on the poster. Kan and Morita did not have a written agreement.

Kan shot the photographs for this project in two different sessions at his studio. Morita arranged and rearranged the glass pieces of the "sculpture" between shots. No assistants were used. Kan took approximately six photographs. Morita selected the photograph to be used for the poster.

The completed poster consisted of a Kan photograph of the shattered dove "sculpture" and a red spot representing a pool of blood, the words "Give Peace A Chance" and "Hiroshima Appeals," and the following credits: "Art/Design: Minoru Morita Glass Sculpture: Milon Townsend Photography: Kan Nakai." The poster has won several awards and is part of the permanent collection of the Hiroshima Museum of Modern Art.

On October 15, 1985, Morita filed an application for copyright registration of the poster "Give Peace a Chance." [1] On the application, Morita listed himself as the author, and described the nature of the material created by him in which copyright is claimed as "lithography and underlying photograph." He also claimed authorship by listing himself as "Minoru Morita employer for hire of: Kan Nakai." Under "nature of authorship" Morita explained: "employed as photographer by Minoru Morita, Kan Nakai created photographic material."

In about March of 1988, Kan authorized defendant Omni Magazine to use as the cover photograph of its May 1988 issue an "out-take" of the dove photograph, that is, one of the photographs not used in the poster. On page 4 of the magazine, the cover photograph was credited as follows:

Part of the permanent collection of the Hiroshima Museum of Modern Art, the photo on this month's cover was shot by New York-based photographer Kan to commemorate the fortieth anniversary of the bombing of Hiroshima.

The cover story of that issue was "Nuclear Renaissance: Reactors Are Back and the Reactions Are Good." In October of 1988, the photograph appeared on the cover of the Japanese edition of Omni Magazine.

After the commencement of this suit and after the initial submission of papers on this motion, Milon Townsend sent Morita a letter stating:

This letter is to certify that previous to February, 1985 I executed for you a

work for hire, one shattered dove, according to the design which you drew, and furnished me to work from.

Any and all rights to the design, specifically including copyrights, belong to you.

## COPYRIGHT

### A. *Prerequisite of Registration*

■ Registration of copyright with the Copyright Office is a condition precedent to suit under the Copyright Act. Section 411 of the Act provides:

(a) Subject to the provisions of subsection (b), no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a). In his complaint, Morita alleges that "[d]efendants' reproduction and distribution of copies of plaintiff's Sculpture constitutes an infringement of plaintiff's copyright therein." (¶ 16.) Morita contends that as Townsend's employer, he, Morita, owns the copyright in the underlying dove "sculpture," and that only he can authorize the use of Kan's photographic copies of the "sculpture." Thus, in order to maintain this copyright action, Morita must have registered his copyright in the dove "sculpture."

The registration form Morita used to apply for copyright registration of the poster has a special section for derivative works in which the applicant is asked to identify any preexisting works that the work submitted for registration is based on or incorporates. Morita entered "n/a" in that section of the application for copyright registration. In fact, neither the "sculpture" nor Townsend are mentioned anywhere on the registration form.

Section 102(a) of the Copyright Act provides that copyright protection is only available for works that are fixed in a tangible medium of expression. 17 U.S.C. § 102(a). Section 101 provides:

---

**1.** The certificate of registration was issued by the Copyright Office and bears the number VA 213–511.

A work is 'fixed' in a tangible medium of expression when its embodiment in a copy ..., by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced or otherwise communicated for a period of more than transitory duration.

17 U.S.C. § 101. There is a substantial question as to whether this "sculpture" which consists of unassembled pieces of glass is fixed enough to be copyrightable. Plaintiff avoided an answer to this troublesome question both by not filing an application for registration of the dove "sculpture" itself, and by omitting any mention of that "work" in his application for registration of the poster.

Moreover, it is doubtful that by registering the poster, plaintiff also registered the underlying "sculpture." Plaintiff argues that registration of a published derivative work subsumes the underlying work and protects it when the author of the derivative work is also the author of the underlying work. Thus, Morita contends that the copyright registration application he filed served to register the underlying dove "sculpture." Although he claims to be the author of the "sculpture," Morita's claim of authorship is based on an employment relationship not mentioned in the registration application. Morita points to *The Compendium of Copyright Office Practices* which provides that no statement is required in the "derivative works" section of the application form "unless a substantial amount of the material incorporated in the derivative work is in the public domain or has been registered or published previously." *The Compendium of Copyright Office Practices*, 626.01(a), February 1988. But Morita did not leave that section blank. Rather, he completed it with the symbol for "not applicable," thereby specifically disclaiming that he was registering the poster as a derivative work and that he was registering a copyright in any preexisting material. It is difficult to see how, under these circumstances, Morita's application for registration of the poster served to register Morita's copyright in the dove "sculpture."

But even if plaintiff could escape from his own words in the application form, it is apparent that the layout of the dove "sculpture" in the poster photograph is different from the arrangement of the pieces of glass in the magazine cover photograph. In fact, Morita himself argues that the two layouts differ. (Morita Aff. ¶ 23–24.) Even if the underlying "sculpture" has been registered by the poster application, the "sculpture" registered was a different "sculpture" from the one copied by defendants. Defendants' allegedly infringing use was not, therefore, of the "sculpture" that plaintiff claims to have registered by implication. No attempt has been made to register the arrangement of the pieces of glass in the photograph that was actually used by the defendants. Without this registration, plaintiff cannot maintain suit for copyright infringement on a theory of ownership of the copyright in the underlying "sculpture."

## B. *Work Made for Hire*

■ I turn then to the claim that Kan's photograph infringes Morita's copyright in the registered poster. This claim was asserted for the first time in the summary judgment papers. It does not appear in the complaint. Nor has Morita attempted to amend the complaint to include it. Nevertheless, in the interest of judicial economy I shall consider the claim raised in Morita's affidavit that Kan's photographic material is "work made for hire" of which Morita is the author and registered copyright proprietor. For purposes of these motions, I conform the pleading to the proof. But plaintiff is directed to amend the complaint within ten days in order to pursue this claim.

Copyright vests initially in the author of a work. 17 U.S.C. § 201(a). The Copyright Act also provides:

In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b). The statute defines a work made for hire as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101(1).[2]

In *Community For Creative Non-Violence v. Reid,* — U.S. —, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Supreme Court held that "to determine whether a work is for hire under the Act, a court first should ascertain, using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor." *Id.* at 2178. Since the issue of agency under the copyright statute is an issue of federal law, a court should look to general principles of agency law, and not the agency law of any particular state in making this determination. *Id.* at 2173. In addition, the Court in *Reid* emphasized the importance of predictability under the copyright law and highlighted the importance of the understanding of the parties on this issue at the time the initial arrangement is made.

In his affidavit in support of his motion, Morita attests that Kan had worked for him before and knew at the outset of the project that Morita would totally control the photographing of the dove "sculpture" and that in fact he exercised complete control over Kan's physical conduct in the photographic sessions. Specifically, Morita states that he set the work schedule for the photographic sessions. He also affirms that he decided that the first series of photographs would be in black and white and that the second series would be in color. He states that he was with Kan at all times during the photographing and that he discussed the lighting and composition with Kan, and told Kan what he wanted. He attests that he laid out the glass pieces of the "sculpture" and selected the background. He also states that he told Kan what size transparencies to use, and instructed Kan to use an outside photography laboratory for developing and printing. He also affirms that he changed the composition slightly for each shot and ultimately

selected the one that would be used in the poster. Morita describes Kan's function in the preparation of the photograph as purely mechanical.

Both sides seek summary judgment on this issue. Affidavits submitted by defendants contradict most of Morita's extreme allegations.

The relationship of employee and employer is not one that is capable of exact definition. Whether this relationship exists in any given case is generally an issue of fact to be determined by the trier of fact. According to section 220(1) of the Restatement (Second) of Agency:

> A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

The Court in *Reid* suggests that courts should consider section 220(2) of the Restatement (Second) of Agency, as well as the following non-exhaustive list of factors, in making this determination: the hiring party's right to control the manner and means of production; the skill required; the source of the instrumentalities and the tools; the location of the work; the duration of the relationship between the parties; the extent of the hired party's discretion over when and how long to work; the method of payment; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Id.* at 2178–79. None of these factors is determinative. *Id.* at 2179.

There is a material factual dispute between the parties both about Kan and Morita's understanding of their roles at the outset of the project and about what actually occurred during the photographic sessions. Furthermore, even if defendants accept plaintiff's facts as true for purposes of the motion, defendants cannot succeed as a matter of law. Similarly, if plaintiff accepts defendants' facts as true for pur-

---

**2.** Section 101(2) provides that work for hire status can also be obtained where a written contract involving a commissioned work in one of nine enumerated classes so provides. This section is inapplicable here, however, since the work does not fall under any of the nine types of work covered by the section and there is no written agreement between Morita and Kan.

poses of their cross-motion, plaintiff cannot succeed as a matter of law. On careful examination, the facts alleged by each side are sufficient to defeat the other's motion. Neither side presents a set of facts that entitles the other side to a decision in its favor as a matter of law. A trial is required for determination of the work for hire issue. Therefore, both motions for summary judgment on that issue are denied.

### C. *Joint Authorship*

 Defendants also move for summary judgment on the ground that the photograph in dispute was a joint work and therefore Kan was entitled to publish it without Morita's permission. The Copyright Act provides that "a 'joint work' is a work prepared by two or more authors with the intention that their contribution be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Each joint owner has the unrestricted right to use or license the joint work and therefore a joint owner and his licensees cannot be held liable for infringement by another joint owner. *Weissmann v. Freeman,* 868 F.2d 1313 (2d Cir.1989).

Morita contends that he never intended to, nor did he, create a joint work. He argues that Kan's contribution did not, and was not intended to, rise to the level of authorship. According to Morita's affidavits, Kan acted merely as a technician, memorializing Morita's "sculpture" with his camera.

The parties raise genuine issues of material fact with respect to Morita's and Kan's relative contributions to the project and their intentions. Therefore, summary judgment must be denied on the issue of joint authorship.

### LANHAM ACT

Plaintiff also claims that defendants' use of the out-take violated Section 43(a) of the Lanham Act which forbids false designation of origin and false descriptions of goods or services. 15 U.S.C. § 1125(a).[3] Plaintiff makes three separate arguments about how defendants' conduct violated the Lanham Act. Defendants contend that the complaint fails to state a claim on which relief can be granted under the Lanham Act.

 Morita's first Lanham Act argument is that the out-take used by Omni was inferior to the photograph selected by him for the poster and, to the extent that people recognize it as his work, use of this inferior photograph damages his reputation and violates the Lanham Act. In *Gilliam v. American Broadcasting Co.,* 538 F.2d 14 (2d Cir.1976), the Second Circuit held that "an allegation that a defendant has presented to the public a 'garbled,' distorted version of plaintiff's work seeks to redress the very rights sought to be protected by the Lanham Act, 15 U.S.C. § 1125(a), and should be recognized as stating a cause of action under that statute." *Id.* at 24–25 (citation omitted). In *Gilliam,* the court upheld an injunction that prohibited ABC from broadcasting a truncated version of a Monty Python show which the trial judge had found "impaired the integrity of [the original] work and represented to the public as the product of [Monty Python] what was actually a mere caricature of their talents." *Id.* at 25. The theory of *Gilliam* does not apply here because unlike the truncated version of the Monty Python show the photograph at issue was not altered in any way.

 Plaintiff's next theory of Lanham Act liability is that he was injured by the use of the photograph of his shattered dove in connection with a pro-nuclear energy article and headline, when the dove and the photograph were created for a contrary purpose. It seems to me that plaintiff is not really complaining about a false de-

---

**3.** The Act provides in part:

Any person who shall affix, apply or annex, or use in connection with any goods or services, ... a false designation of origin, or any false description or representation ... and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a).

scription or a false designation of origin, but rather about the allegedly unauthorized use of a photograph of which he claims authorship. This is a claim in the nature of copyright that does not fit into the mold of unfair competition. The Copyright Act provides an adequate remedy for the injury of which plaintiff complains. The Lanham Act should not be distorted to provide a remedy for a failed claim of copyright infringement. The two cases plaintiff relies on in support of his theory are inapposite. In *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533 (W.D.Texas 1980), the court applied Texas common law, not the Lanham Act, to plaintiff's unfair competition claim. The defendant in *Benson v. Paul Winley Record Sales Corp.*, 452 F.Supp. 516 (S.D.N.Y. 1978), was accused of taking old recordings by a well-known musician, remixing them, over-dubbing some of them with sexual noises, and marketing them as new music created by the artist. That situation, involving both the mutilation of Benson's work and the false presentation of it to the public as new when it was old, is not analogous to the harm Morita claims from the juxtaposition of a photograph associated with him with a magazine headline.

■ Finally, plaintiff makes the inconsistent claim that defendants violated the false designation of origin provision of the Lanham Act by failing to include his name in the credit for the photograph used on the magazine covers. The credit contains no misstatements; it identifies Kan only as the photographer of the cover photograph, a claim which Morita does not dispute. In order for Morita to state a claim on this theory, the Lanham Act must create a duty of express attribution. Morita points to no language in the statute itself from which such a duty could flow. Most of the cases he cites in support of this claim involve misattributions, not omissions. *See e.g., Dodd v. Fort Smith Special School District*, 4 U.S.P.Q. 1395 (D.C.Ark.1987) (in

which a teacher published a book under her own name that had actually been written by another teacher and a school class.) In *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403 (9th Cir.1988), the Ninth Circuit held that it was a Lanham Act violation for a songwriter to publish a song with his name on it without giving credit to the other writers of the song. Thus, under *Lamothe*, if there were any other photographers, the Lanham Act would require that the credit "photographer" include those names as well.

Furthermore, the *Lamothe* court determined that the writers named and the writers not named were in competition with one another. The court required that "in cases involving false designation, the actionable 'conduct must not only be unfair but must in some discernable way be competitive.'" *Lamothe*, 847 at 1406, *quoting Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir.1987). Nowhere in either the complaint or the affidavits submitted does Morita allege that he and Kan are in competition. Without this element, Morita cannot assert this claim, and it must be dismissed.

## STATE LAW CLAIM

■ Defendant also moves to dismiss plaintiff's third claim for relief which alleges a violation of Section 14.03 of the New York Arts and Cultural Affairs Law. N.Y. Arts & Cult.Aff. § 14.03 (McKinney 1984).[4] In his complaint Morita claims that defendants' conduct violates § 14.03 in that:

the placement of the Sculpture which was created solely to depict an anti-nuclear message together with a pro-nuclear text is an alteration, defacement, mutilation and modification of his Sculpture by defendants, without his consent and is reasonably likely to result in damage to his reputation.

Complaint, ¶ 24.

As noted above in the discussion of Morita's Lanham Act claim, the picture on the

---

4. As a threshold matter, the statute is only applicable in situations where less than 300 multiples of the work that the author claims has been misused have been produced. Plaintiff alleges that only 250 copies of the poster were produced, while Kan alleges that he received 500 copies of the poster from Morita. Since there is a dispute of fact on this issue, the claim cannot be dismissed on the ground that the number of multiples exceeds the statutory ceiling, thus making the work ineligible for the protection of the statute.

Omni magazine covers is not a mutilation or alteration of Morita's work at all. Nothing about it was changed between its creation and the use about which Morita is complaining. Juxtaposition with a magazine headline is not an alteration, defacement, mutilation or modification. Therefore, Morita's third claim for relief must be dismissed.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment on the copyright claim is granted in part and denied in part. Defendants' motion to dismiss the Lanham Act claim and the state law claim is granted for failure to state a claim. Plaintiff's cross-motion for partial summary judgment is denied.

SO ORDERED.