**MOTOWN RECORD CORPORATION, and Jobete Music Company, Inc., Plaintiffs,**

v.

**GEORGE A. HORMEL & CO., and Ruhr/Paragon, Inc., Defendants.**

CV 85–6973 WJR.

United States District Court, C.D. California.

April 16, 1987.

Alan G. Dowling, David W. Grace, Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Beverly Hills, Cal., for plaintiffs.

Timothy D. Reuben, Diana J. Simon, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

REA, District Judge.

### I. INTRODUCTION

This Matter is before the Court based on defendants' Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.Proc. 12(c). Defendants move for judgment on the pendent state claims alleged in the third, fifth, sixth, seventh, eighth, ninth and tenth causes of action claiming that these causes of action are preempted by the Federal Copyright Act. Defendants also move for judgment on the Lanham Act claim on the grounds that plaintiffs cannot seek trademark protection of an "image."

### II. BACKGROUND

Plaintiffs Motown Record Corporation (Motown) and Jobete Music Company, Inc. (Jobete) brought this action against defendant George A. Hormel & Co. and Ruhr/Paragon, Inc. alleging copyright infringement, trademark infringement, seven pendent state claims and a claim for declaratory relief.

In 1964, the songwriting team of Brian Holland, Lamont Dozier, and Eddie Holland (Holland-Dozier-Holland) composed a musical composition entitled "Baby Love". Holland-Dozier-Holland entered into exclusive songwriting agreements with plaintiff Jobete, pursuant to which Jobete was granted the copyright in the musical composition "Baby Love." "Baby Love" was recorded by a trio of performing artists named "The Supremes." The various recording artists on "The Supremes" changed over the years, but the group always consisted of three young black women. "The Supremes" frequently performed in formal gowns (often sequined) and had "bouffant" hairstyles. The name "The Supremes" was registered as a trademark by Motown, and such registration appears to be uncontested by defendants.

Plaintiffs claim that in October of 1985, a Motown employee saw an advertisement broadcast on ABC–TV for Hormel's "Dinty Moore" brand beef stew. The commercial, in part, featured three young black women, with bouffant hair, in sequined formal gowns singing "Dinty Moore, My Dinty Moore," to the tune of the Motown classic "Baby Love." Plaintiffs further contend that the use of the image of "The Supremes" in the commercial without Motown's permission, coupled with the unlicensed use of the musical composition, is likely to cause confusion and create the misimpression by the public and the trade that Motown authorized the use of the image of "The Supremes."

Previously, the Court granted a Temporary Restraining Order and a Preliminary Injunction requiring defendants to cease the use of the offending advertisement. Defendants now bring the present motion for a Judgment on the Pleadings.

### III. DISCUSSION

#### A. Rule 12(c) Motion

Plaintiffs first argue that defendants' motion for a judgment on the pleadings is inappropriate because the defendants have attacked only seven of the ten counts of the complaint. Therefore, plaintiffs contend, a judgment could not result from the present motion.

Plaintiffs argument against the propriety of a "partial" judgment on the pleadings is not a frequently addressed area of the law. Wright and Miller note that currently, "the Rule 12(c) motion is little more than a relic of the common law and code eras. Its preservation in the original federal rules undoubtedly was due to the undeveloped character of the summary judgment proce-

dure...." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1369, pps. 701–02 (1969).

There are numerous cases which cite in their procedural history that a trial court granted partial judgment on the pleadings. *E.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (in describing procedural history of case, Court noted that district court granted city's motion for *partial* judgment on the pleadings); *See also Hixon v. Durbin,* 545 F.Supp. 231, 233 (E.D.Pa.1982); *Cutler v. Bank of America National Trust & Savings Association,* 441 F.Supp. 863, 866 (N.D.Cal.1977). Nevertheless, F.R.Civ.P. 12(c) does not expressly provide for a partial judgment.

Wright & Miller point out that the legal standard to be applied in either a motion for summary judgment or judgment on the pleadings is "identical". 5 C. Wright & A. Miller, Federal Practice and Procedure § 1369, p. 700 (1969). The difference between the two is essentially one of timing. A summary judgment motion cannot be brought by a plaintiff until 20 days after the commencement of an action—a defendant may bring the motion at any time. In contrast, neither party can move for a motion for judgment on the pleadings until the close of the pleadings. Wright and Miller also state that "the summary judgment procedure offers the additional advantage that if the court refuses to grant the motion in its entirety, there remains the possibility of its awarding a partial summary judgment under Rule 56(d).... There is no comparable provision in Rule 12(c)...." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1369, p. 701 (1969).

Rather than decide the propriety of a "partial" judgment on the pleadings, this Court will consider defendants' motion as a motion for partial summary judgment pursuant to F.R.Civ.P. 56(d). The parties have extensively briefed the issues before the Court, and the Court finds that it has before it all the pertinent materials necessary to decide the matter. Furthermore, at the hearing on the present motion, the Court notified the parties that due to plaintiffs opposition to the form of defendants' motion, the motion would be considered as motion for partial summary judgment. Neither party objected.

**B. Preemption of Pendent State Claims**

**1. Title 17 U.S.C. § 301**

The Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*) describes in § 301 the extent to which the Act preempts state law causes of action based on copyright. 17 U.S.C. § 301(a) & (b) states in pertinent part:

(a) On and after January 1, 1978, *all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106* in works of authorship that are fixed in a tangible medium of expression and *come within the subject matter of copyright as specified by section by secton 102 and 103 ... are governed exclusively by this title.* Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by section 102 and 103, including works of authorship not fixed in any tangible medium of expression....

(Emphasis Added).

Pursuant to § 301(a), preemption exists only if: 1) the state right is "within the subject matter of copyright" as defined in the Act; and 2) the state right is "equivalent" to any exclusive rights of a federal copyright. Initially, the legislature included in the bill a list of state claims which would not be preempted by federal law. An early draft of the bill read:

§ 301(b)(3): activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright ... including rights against misappropriation not equivalent to any such exclusive rights, breaches of contract, breaches of trust,

trespass, conversion, invasion of privacy, defamation, and deceptive trade practices such as passing off and false representation.

S.22, 84th Cong., 2d Sess. (September 3, 1976).

The above list, however, was excluded from the actual statute without a satisfactory explanation. The result is that the courts are now left to grapple with the decision of which state law causes of action are equivalent to rights covered by the Copyright Act.

### 2. Third Cause of Action for Unfair Competition

■ Plaintiffs third claim for unfair competition under California Business and Professions Code § 17200 *et seq.* and § 17500 incorporates all of the allegations of the first claim for copyright infringement. Plaintiffs also included additional allegations that "the conduct of defendants in deliberately producing and broadcasting the Offending Advertisement and falsely implying that the Composition and said image of the Supremes were utilized with the permission of Motown and Jobete, constitute unfair competition." Defendants argue that the gravamen of the unfair competition claim is nothing more than the alleged taking of plaintiffs' intellectual property.

Defendants further contend that the requirements of § 301(a) are met. First, the composition "Baby Love" falls within the subject matter of copyright as specified by § 102. Second, the allegedly infringed rights are the equivalent of rights specified in § 106. Section 106 lists the exclusive rights in copyrighted works. Among these rights are the rights of reproduction and distribution.

Nimmer, in his copyright treatise, articulated the test for preemption as follows: [A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display.... If, under state law the act of reproduction, performance, distribution or display, ... will in itself infringe the state created right,

then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the scope of copyright," and there is no preemption.

1 M. Nimmer, The Law of Copyright § 1.01[B][3] at 1–11–12 (1984).

In *Fisher v. Dees*, 794 F.2d 432 (9th Cir.1986) the court upheld the grant of summary judgment on a claim for unfair competition on the ground that it was preempted by federal law. In *Dees*, the Ninth Circuit extended previous Supreme Court rulings relating to patents, to the copyright arena. The *Dees* court cited a previous Ninth Circuit decision which reasoned that "just as a state could not encroach upon the federal patent laws directly it could not do so indirectly under the guise of enforcing its law against unfair competition where those laws would clash with the federal objectives." *Id.* at 440; citing, *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711, 717 (9th Cir.1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 646 (1971). The court in *Dees* then added that "[t]he same applies to the copyright statute." *Dees*, 794 F.2d at 440.

Similarly, the court in *Mayer v. Josiah Wedgewood & Sons Ltd*, 601 F.Supp. 1523 (S.D.N.Y.1985) granted summary judgment on the ground that a complaint for unfair competition and conversion were preempted by the Copyright Act. In *Mayer*, the court reasoned that simply because certain state claims contained different elements from their copyright counterparts, this alone would not save them from preemption. Instead, the court noted that the " 'extra element' ... must be one which changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Mayer*, 601 F.Supp. at 1535 (emphasis in original). *See also Universal City Studios v. The T–Shirt Gallery, Ltd.*, 634 F.Supp. 1468 (S.D.N.Y. 1986).

It appears from plaintiffs' complaint that their unfair competition claim is not quali-

tatively different from their copyright claim. The essence of plaintiffs complaint is derived from defendants alleged unauthorized use of a copyrighted work. The Court finds that plaintiffs' third cause of action for unfair competition is within the scope of Copyright Act and is therefore preempted by federal law.

3. Plaintiffs' Claims for Negligent and Intentional Interference with Prospective Business Advantage

■ The fifth claim for intentional interference with prospective business advantage alleges that "[a]lthough defendants failed to secure a license from plaintiffs, defendant nonetheless released the Offending Advertisement ... in such manner as to (a) deprive Jobete of the ability to freely exploit the Composition ... (b) disrupt the the ongoing business relationship of Plaintiffs with 'The Supremes' and Holland-Dosier-Holland, and (c) interfere with the ongoing exploitation of 'The Supremes' recordings and other materials presently on the market." The claim for negligent interference with prospective advantage alleges the same basic contentions.

In *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) the court found that a claim for tortious interference with contractual relations was preempted by the Copyright Act. The Second Circuit Court reasoned as follows:

> In both [the copyright infringement and the interference with contract], it is the act of unauthorized publication which causes the violation. The enjoyment of benefits from derivative use is so intimately bound up with the right itself that it could not possibly be deemed a separate element.... As the trial court noted, the fact that cross-appellants pleaded additional elements of awareness and intentional interference, not part of a copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Harper & Row*, 723 F.2d at 201. *See also McNabb Bennett & Associates, Inc. v. Terp Meyers Architects*, No. 85 C8792, Slip Op. at 7 (N.D.Ill.1986) [Available on WEST-LAW, DCT database] (court granted motion to dismiss claim for tortious interference with contract on grounds that it was preempted by Copyright Act). Elements such as awareness or intent may alter the scope of the action but not its nature. The Court therefore finds that plaintiffs fifth and sixth causes of action for intentional and negligent interference with prospective business advantage are preempted by federal law.

4. Plaintiffs' Cause of Action under Cal. Civ.Code § 3344

■ Section 3344 of the California Civil Code provides in pertinent part:

> "Any person who knowingly uses another's name, voice, signature, photograph or likeness, in any manner, on or in products, merchandise or goods, or for purposes of advertising or selling, ... of products ... without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof ..."

Cal.Civ.Code § 3344 (West Supp.1987).

Plaintiffs' complaint revolves around the unauthorized use of a copyrighted work. Without the use of the tune from "Baby Love," plaintiffs complaint would most likely be without merit. The seventh claim alleges that "defendants knowingly used the image of "The Supremes" and the Composition in connection with the Offending Advertisement and for purposes of advertising, selling, and/or soliciting purchases of Hormel products, without the consent of plaintiffs...." The fact that § 3344 requires that the unauthorized use must be in connection with the advertising of a product, unlike copyright, is not a *qualitative* extra element which changes the nature of the action.

The Court recognizes that § 3344 may not always be preempted by copyright law. However, given the unique nature of plaintiffs' complaint, the Court finds that the basic act which constitutes the alleged in-

fringement—the unauthorized use of plaintiffs' composition—is the same as that of copyright and is therefore preempted.

**5. Plaintiffs Claims for Constructive Trust and Accounting**

■ Plaintiffs concede that perhaps their claims for constructive trust and accounting are duplicative. Plaintiffs, however, urge that these two claims be stricken rather than dismissed. Plaintiffs concern stems from the belief that if judgment is entered on these claims they would not be able to assert them at trial. However, the Court's finding that these causes of action are preempted is based on the premise that they are equivalent to rights and remedies provided for under the copyright statute. The Court's ruling would, therefore, only restrict plaintiffs to the remedies available under the Copyright Act, but would not act as a total bar.

The Ninth Circuit in *Oddo v. Ries*, 743 F.2d 630 (9th Cir.1984) found that an accounting was permissible under state law. However, the *Ries* case involved a joint work, and a co-owner of a joint work may not recover for copyright infringement against another co-owner of the work. *Ries*, 743 F.2d at 632–33. Therefore, the Ninth Circuit in *Ries* permitted the state law causes of action because recovery was not possible under federal law.

In the present case, the facts alleged in support of separate causes of action for both the accounting and the constructive trust claims are rooted primarily on contentions that defendants infringed on plaintiffs' copyrighted work. Plaintiffs separate causes of action for accounting and constructive trust are therefore preempted.

**C. Plaintiffs' claim under § 43(a) of the Lanham Act**

■ Defendants urge that plaintiffs have no protectable trademark interest in the likeness, style and image of "The Supremes." Plaintiffs, however, assert that they should be entitled to demonstrate that the image is protectable against the defendants' alleged attempt to mislead the public and the trade into believing the de-

fendants had obtained a license from Motown to promote their beef stew.

Plaintiffs claim that they have a right to protect the "persona" or the likeness, style and image of "The Supremes." *See* J. McCarthy, The Rights of Publicity and Privacy (1987). Plaintiffs further argue that the protected interest is the goodwill associated with a "persona" developed through years of promotional effort and success. Plaintiffs may have a difficult time proving that they have an interest in the "image" of "The Supremes"—especially due the fact that the three recording artists in "The Supremes" changed throughout the years.

Furthermore, the basis for a § 43(a) claim is to prevent the use of a mark in commerce which is likely to confuse or deceive purchasers concerning the source of the goods. *See New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir.1979). Plaintiffs are not alleging that defendants tried to "pass off" the trio in the commercial as the actual "Supremes." However, because plaintiffs may be able to show some kind of protectable interest in the "persona" of "The Supremes," it is premature to enter judgment on their second cause of action under § 43(a) of the Lanham Act. The motion on this cause of action is denied.

**IV. CONCLUSION**

Accordingly, for the above stated reasons it is HEREBY ORDERED that the defendants' motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART.

SO ORDERED.