**XEROX CORPORATION, Plaintiff,**

v.

**APPLE COMPUTER, INC., Defendant.**

**No. C–89–4428–VRW.**

United States District Court,
N.D. California.

April 10, 1990.

---

Henry C. Bunsow, Anthony B. Diepenbrock, Theodore G. Brown, III, Susan E. Hollander, Townsend and Townsend, San Francisco, Cal., Ronald Zibelli, Harvey M. Brownrout, Xerox Corp., Stamford, Conn., for plaintiff.

Jack E. Brown, Brown & Bain, P.A., Phoenix, Ariz., Chris R. Ottenweller, Martin L. Lagod, Brown & Bain, Palo Alto, Cal., for defendant.

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING SANCTIONS, AND MODIFYING STAY OF DISCOVERY

WALKER, District Judge.

Xerox Corporation ("Xerox") seeks declaratory and other relief against Apple Computer, Inc. ("Apple") regarding certain copyrighted works.[1] Xerox claims in part that Apple derived its Lisa and Macintosh Finder copyright registrations from Xerox' Star copyrighted material. On March 23, 1990, the court heard, and announced this decision on, Apple's motion to dismiss the complaint for lack of a justiciable case or controversy and for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(1) and (6), and for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). All discovery in this matter has been stayed pursuant to an order of the Honorable William W Schwarzer pending a ruling on this motion.

The Rule 12(b) motion is untimely, since it should have been filed before Apple answered the complaint. An untimely motion to dismiss is treated as a motion for judgment on the pleadings. *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir.1980). The court must accept as true all of the well-pleaded facts alleged in the complaint, and may not dismiss the action unless it is convinced that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985); *Austad v. United States*, 386 F.2d 147 (9th Cir.1967).

## I. ALLEGATIONS OF XEROX' COMPLAINT.

The complaint alleges the following. Xerox' Smalltalk, which was developed in the mid-1970s at its Palo Alto Research Center ("PARC"), was the first computer language that allowed a user to interact with a computer through the use of a mouse (hand-held device). Smalltalk did not utilize on-screen icons (graphical representations of objects). In November of 1979, Steven Jobs, then-president of Apple, visited PARC with other Apple employees for a demonstration of Smalltalk. On June 9, 1981, Xerox granted Apple a license pursuant to which Apple agreed to "participate in a project with the Learning Research Group at PARC/Xerox for the purpose of implementing the Smalltalk-80 language and system on a hardware system to be developed by [Apple]." Shortly thereafter, Apple began developing its "Lisa" computer for use with Smalltalk. Xerox does not allege that Smalltalk was ever "published"[2] or registered with the Copyright Office.

---

**1.** Count I of the complaint seeks a declaratory judgment that Xerox is the sole owner of the entirety of the Star copyrighted work. Counts II and III seek an order striking Apple's Lisa and Macintosh Finder copyright registrations for unlawful use of preexisting copyrighted material in violation of 17 U.S.C. § 103(a) and 17 U.S.C. § 106(2) and for failure to identify the preexisting works on which Apple's copyrights were based in violation of 17 U.S.C. § 409(9). Count IV seeks $25,000,000 in damages for Apple's unfair business practices in violation of Cal.Bus. & Prof.Code §§ 17200 *et seq.* and punitive damages for fraud within the meaning of

Cal.Civ.Code §§ 3294 *et seq.* Count V seeks damages for Apple's alleged false designation of the origin of its copyrighted works and false description and representation in violation of 15 U.S.C. § 1125(a). Count VI seeks the imposition of a constructive trust pursuant to Cal.Civ. Code § 2224 on all benefits received by Apple as a result of its alleged violations of Xerox' copyrights.

**2.** "Publication" is the "distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease or lending. ... A public performance or display of a work

Another Xerox research project, Star, was developed at PARC in the late 1970s. Star included a mouse-driven computer that was allegedly the first to introduce fanciful visual displays and graphical images to aid user interaction with the computer. Star was first published by Xerox on April 27, 1981 and since then has contained a notice of copyright. Xerox applied for copyright registration of the Star 8010 Professional Workstation program on April 28, 1986, and was granted Registration No. TX 2–428–306. This program was never licensed to Apple.

On May 1, 1987, Apple applied for copyright registration for the Lisa and received Registration No. PA 336–104. Lisa was first published in 1983, two years after publication of Star. On May 1, 1987 and August 25, 1987, Apple applied for copyright registration for its Macintosh Finder program and received Registration Nos. PA 336–105 and TX 2–130–713. In its application, Apple described Macintosh Finder, which was published in 1984, as a derivative work based on Lisa.

On March 17, 1988, Apple sued Microsoft Corporation and Hewlett–Packard Company in this court for copyright infringement of, among other works, Lisa and Macintosh Finder and for unfair competition. In that suit, Apple asserted that Lisa and Macintosh Finder substantially consist of material wholly original to Apple.

## II. SOME FUNDAMENTALS OF COPYRIGHT.

A brief rumination on copyright will frame the court's perspective.

The signers of our Constitution were as experienced in practical endeavors as they were in political activities. From an appreciation of both, the signers determined to permit the establishment of property rights in the realm of ideas. Hence, Article I, Section 8 of the Constitution provides that Congress shall have the power:

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to Their respective Writings and Discoveries.

Under the laws enacted pursuant to this clause, copyright protection is not available for many useful ideas (e.g., supermarkets, self-service gasoline stations, discount retailing, theories about historical facts). *See* A. Alchian & W. Allen, *Exchange and Production* 292–293 (3d ed. 1983); M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.11[A], at 2–157 to 2–159, § 2.18[H], at 2–213 (1989). Originators of such nonprotected ideas must derive their profits ("Ricardian rents") by being the first or most innovative to produce or deliver goods and services embodying nonprotected ideas (*see* A. Alchian and W. Allen, *supra,* at 189–191). But for creators of protected ideas, copyrights offer an additional reward by legally sanctioning a monopoly in accordance with the terms set by Congress.[3] As a monopolist, a copyright holder will charge more and produce less than the price or output which would obtain under competitive conditions, but the resulting monopoly rent from copyright affords an incentive for socially beneficial creative activity:

The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in "Science and useful Arts." Sacrificial days devoted to such creative activities deserve rewards commensurate with the services rendered.

*Mazer v. Stein,* 347 U.S. 201, 219, 74 S.Ct. 460, 471, 98 L.Ed. 630 (1954).

The underlying economic and legal issue in copyright is the tradeoff between the social benefits of increased production of

does not of itself constitute publication." 17 U.S.C. § 101 (1988).

**3.** The establishment and recordation of rights in intellectual property, no less than in other types of property, also foster exchange and promote economic efficiency by matching gains with related costs. *See* R. Posner, *Economic Analysis of Law* 33–39 (3d ed. 1986); H. Demsetz, "Toward a Theory of Property Rights," 57 *Am.Econ. Rev.* 347 (1967).

useful ideas brought about by giving a copyright holder the monopoly protection afforded copyrighted works and the social costs imposed by raising the marginal cost of using copyrighted works. *See* R. Posner, *Economic Analysis of Law* 359–363 (3d ed. 1986). Courts are repeatedly called upon to resolve the tensions inherent in this tradeoff.[4]

The main vehicle for enforcement of rights under the Copyright Act is the infringement action, 17 U.S.C. § 501 *et seq.* (1988). Rather than allege that Apple infringed the Star copyright, Xerox takes a different tack. Xerox seeks to have this court declare that Xerox owns the Star copyright and that Apple's copyrights allegedly derived from the Star copyright and are invalid. At oral argument, Xerox' counsel analogized its approach to a quiet title proceeding, which Xerox contends it may pursue in lieu of a remedy for infringement. By this light, an infringement action would presumably be in the nature of a trespass action. Such analogies will bear only so much weight, and for the reasons stated below the court is as unwilling to import remedies from other fields of law as it is to create new remedies in copyright law where none previously existed.

The point of this preliminary digression is that where fundamental social values conflict—in this case the social costs and creative incentives of copyright—and that conflict is resolved by statute, the mechanisms for resolution provided for in that statute call for particular obedience. Legal remedies are not mere forms of action carved from analogies; they have substantive implication. Xerox argues that an infringement action would not afford the relief it desires. But that claim, even if true, does not authorize this court to permit Xerox to fashion a substitute remedy.

While its interactive nature and other features have prompted questioning of the adequacy of traditional copyright protection in the case of computer software (*see, e.g.,* U.S. Congress, Office of Technology Assessment, Computer Software and Intellectual Property—Background Paper, OTA–BP–CIT–61 (March 1990)), this action is no place to take up such matters.[5] In this court's view, the bulk of Xerox' complaint fails because it fails to adhere to the path established by Congress to reach the relief sought.

## III. DISCUSSION.

### A. *Count I: Declaratory Judgment as to Sole Ownership of the Star Copyrighted Work.*

■ In Count I, Xerox seeks a declaratory judgment that it is the sole owner of the entirety of the Star work including all overlapping features found in Apple's Lisa and/or Macintosh Finder works. Xerox alleges that Apple has wrongfully claimed originality and ownership of substantial portions of Xerox' Star and Smalltalk and that Xerox has been unable to license Star to other companies (with the exception of Sun Microsystems Inc. and Metaphor Computer Systems, Inc.), since potential licensees are concerned about the possibility of being sued by Apple for copyright infringement. Apple maintains that the mere fact that it has registered its works and asserted rights stemming from its copyrights does not mean that it has claimed ownership of any material that "overlaps" with material in Star.

This court may issue a declaratory judgment "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). A potential defendant may sue preemptively for declaratory relief if the claim that would be asserted against it arises under

---

4. *Compare, e.g., Sony Corp. v. Universal City Studios,* 464 U.S. 417, at 429, 104 S.Ct. 774, at 782, 78 L.Ed.2d 574, *rehearing denied,* 465 U.S. 1112, 104 S.Ct. 1619, 80 L.Ed.2d 148 (1984) *with Universal City Studios v. Sony Corp.,* 659 F.2d 963, at 965 (9th Cir.1981), *rev'd,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

5. It is even less the province of this court to determine the "broader issue," as defined by Xerox: "whether Xerox or Apple has the right to control the future of the design and appearance of graphic user interfaces in the 1990's and beyond." Memorandum of Points and Authorities in Opposition to Motion to Dismiss, at 2. Courts may on occasion break up monopolies, but should not create them.

federal law. *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Although Xerox' complaint is thus properly within this court's jurisdiction, Apple disputes the existence of an actual controversy. The "actual controversy" requirement under 28 U.S.C. § 2201(a) is the same as the "case or controversy" requirement under Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In general, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), which has "crystallized to the point that there is a specific need" for a declaratory judgment. *J.N.S., Inc. v. Indiana,* 712 F.2d 303, 305 (7th Cir.1983).

Plaintiff's allegations must meet specific standards in the patent and copyright law context before an actual controversy will be deemed to exist. The Ninth Circuit has held that an action for declaratory judgment involving the validity or infringement of a copyright presents a justiciable case or controversy if the defendant's actions have caused the declaratory judgment plaintiff to harbor a "real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Hal Roach Studios v. Richard Feiner & Co.,* 883 F.2d 1429 (9th Cir.1989).[6] If the plaintiff is engaged in the ongoing production of the allegedly copyrighted item, the showing of apprehension need not be substantial. *Hal Roach Studios,* 883 F.2d at 1442 (quoting *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.,* 655 F.2d 938 (9th Cir.1981)).

Xerox alleges that the copyright registration for its Star 8010 Professional Workstation includes the "computer program and screen displays." Complaint, ¶ 13. Xerox further alleges that, with the two exceptions mentioned above, it has been unsuccessful in its attempts to license other companies to use work covered by the Star copyright because potential licensees fear that they will be sued for copyright infringement by Apple. Complaint, ¶ 18. Even if the court accepts these allegations as true, it does not appear that an "actual controversy" requiring declaratory relief exists.

It may be inferred from the allegations in the complaint that Xerox is currently manufacturing the Star 8010 Professional Workstation. However, no facts are alleged that would tend to support the existence of a "real and reasonable apprehension of liability" on Xerox' part. Xerox alleges neither that Apple has threatened it with suit for infringement of Apple's copyrights nor that Apple has threatened either of its two current licensees or any true potential licensees. At most, Xerox alleges in conclusory fashion that it "has a reasonable apprehension that its customers and potential customers will be *subject to suit*" and that it is "reasonably apprehensive that it *may be directly sued* by Apple for contributory infringement in the event its licensees are sued for infringement." Complaint, ¶ 22 (emphasis added). Any manufacturer whose products resemble those of another may make that assertion, however.[7]

It is important to avoid a premature conclusion that a controversy exists, particularly in light of the salutary effect of competition on the advance of technology. If

---

6. Other circuits hold that an actual controversy exists if the plaintiff has a reasonable apprehension of *litigation* and has engaged in a course of conduct which brings it into adversarial conflict with the declaratory judgment defendant. *See, e.g., Texas v. West Publishing Co.,* 882 F.2d 171 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *Windsurfing International, Inc. v. AMF,* 828 F.2d 755 (Fed. Cir.1987). This court's decision in the present action would be the same under either formulation.

7. The only circumstance under which Xerox might conceivably face "liability" is if its licensee Metaphor Computer Systems is sued by Apple, found liable, and enforces the right of indemnification in its license agreement against Xerox. As none of these events has occurred or is alleged to be imminent, mere speculation on Xerox' part as to their likelihood cannot substitute for a real and reasonable apprehension of liability.

copyright litigants were free to use declaratory relief to preclude any "overlap" by competitors, there is a danger that further refinements and developments in technology would be unduly stunted.

The cases cited by Xerox in support of its claim that an actual controversy exists are factually distinguishable from the present case. In *Chesebrough–Pond's v. Faberge, Inc.*, 666 F.2d 393 (9th Cir.1982), Faberge had sent Chesebrough a letter declaring its intent to file opposition proceedings in the Patent Office on the grounds that Chesebrough's proposed use of the mark at issue was likely to cause confusion with respect to Faberge's existing mark. Because the "likelihood of confusion" standard would be relevant not only in registration proceedings but also in infringement actions, the court found that it was reasonable for Chesebrough to infer a threat of litigation from the letter. In *Societe de Conditionnement en Aluminium*, 655 F.2d 938 (9th Cir.1981), a Hunter employee telephoned a potential customer of the plaintiff and threatened to sue for patent infringement. The court noted that Hunter's failure to withdraw the threat left the plaintiff with a "Damoclean threat" of suit hanging above it.

Likewise, in each of the other cases cited by Xerox, the defendant had taken actions or engaged in a course of conduct that supported plaintiff's apprehensions. *See, e.g., Sherwood Medical Indus. v. Deknatel*, 512 F.2d 724 (8th Cir.1975) (defendant's actions, including suit against another company, letter from its attorney to plaintiff warning of infringement, surreptitious examination of plaintiff's product, and statement by high-ranking employee to plaintiff that plaintiff was infringing, justified apprehension); *Airship Indus. v. Goodyear Tire & Rubber*, 643 F.Supp. 754 (S.D.N.Y. 1986) (defendant sued two customers of plaintiff and plaintiff alleged that defendant was about to file other suits); *Nippon Electric Glass Co. v. Sheldon*, 489 F.Supp. 119 (S.D.N.Y.1980) (defendant's attorney sent plaintiff letters alleging infringement);

*Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219 (D.N.J.1966) (possibility of *in terrorem* effect of defendant's letters and lawsuits required discovery and possibly trial).

In contrast, Xerox alleges no actions on Apple's part that could be construed as threats of imminent litigation. Apple's suit against Microsoft and Hewlett–Packard alone cannot reasonably be viewed as giving rise to an "apprehension of liability" on Xerox' part, since the defendants therein have no relationship to Xerox, their alleged status as "potential licensees" notwithstanding.[8] *See, e.g., Texas v. West Publishing Co.*, 882 F.2d 171 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (simple assertion by defendant that it holds a copyright in certain material does not amount to a threat of litigation); *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879 (Fed.Cir. 1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986) (plaintiff could not demonstrate reasonable fear of litigation based on its allegations of defendant's litigation against unconnected third parties and letter to plaintiff inviting discussion of becoming licensee under defendant's patent).

In the absence of other allegations, the court finds that Xerox' apprehension is not reasonable and thus does not justify declaratory relief. In the interests of considering a more comprehensive record on this issue, however, the court will not enter judgment on Count I at this point. The earlier order staying discovery will be modified as set forth in Part V below to allow Xerox, if it is able, to substantiate its allegations as to fear of liability caused by Apple's actions.

B. *Counts II and III: Order Striking Apple's Copyright Registrations.*

In Counts II and III, Xerox seeks an order directing the Copyright Office to strike Apple's Lisa and Macintosh Finder

---

**8.** Every software company might be a "potential licensee." It is telling that no others are specifically alleged. If Xerox alleged that Microsoft and Hewlett–Packard were about to license Star and Apple sued them for infringement because of such plans, Xerox would have a stronger case for a reasonable apprehension of liability on its own part.

registrations for violations of 17 U.S.C. §§ 103(a), 106(2) and 409(9).[9] Xerox alleges that Apple unlawfully copied portions of Xerox' Star work in violation of section 103(a) and in derogation of its exclusive rights under section 106(2), and that Apple's copyright applications intentionally and purposefully failed to identify Lisa and Macintosh Finder as derivative works of Star and Smalltalk [10] in violation of section 409(9). For these reasons, Xerox argues, Apple's copyrights should be declared invalid and ordered stricken.[11] Xerox contends that it has standing to request this relief under the Copyright Act, the Declaratory Judgment Act and "relevant case law." The court finds no basis for such relief in any of these sources.

As discussed above, an action for declaratory judgment involving the validity of a copyright is justiciable if the plaintiff has a real and reasonable apprehension of liability caused by the defendant's actions. *Hal Roach Studios v. Richard Feiner & Co.*, 883 F.2d 1429, 1442 (9th Cir.1989). For the same reasons discussed in Part III.A, the court finds that Xerox has failed to allege an "actual controversy" warranting the requested declaration. The court notes that even if Xerox had succeeded in meeting this requirement, Apple's use of litigation to assert its rights under its copyright registrations, without more, would not be sufficient grounds for declaring those registrations invalid.

Xerox claims that its standing is assured by its allegation of a "personal stake in the outcome of the controversy sufficient to assure that concrete adverseness which sharpens the presentation of issues." *Lar-*

*son v. Valente*, 456 U.S. 228, 238–39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982). However, a *Larson* showing is appropriate to rebut a charge that the complainant is not the proper party to be bringing suit. The question with respect to Counts II and III of the complaint is not whether Xerox is the proper party to be bringing suit, but whether the relief requested is available. For the reasons that follow, this court holds that it is not.

The Copyright Act does not provide that a court may order the cancellation of a copyright. Of course, the inquiry does not end there. In determining whether a private right of action can be implied from a regulatory statute, the court must look to the *Cort v. Ash* factors:

> Is the plaintiff a member of a class for whose *especial* benefit the statute was enacted?
>
> Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
>
> Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
>
> Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?
>
> *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

Xerox, as a copyright holder, is a member of the class protected by the Copyright Act. For the reasons stated throughout this opinion, the court responds in the negative to the third *Cort v. Ash* inquiry, and

---

9. Section 103(a) of the Copyright Act states in part that "protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." Section 106(2) grants to a copyright holder the exclusive right to prepare derivative works based upon the copyrighted work, or to authorize the preparation of such derivative works. Section 409(9) requires that an application for registration of a "compilation or derivative work" include an "identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."

10. As noted in Section I, Xerox does not allege that Smalltalk was ever copyrighted or registered. Consequently, any alleged misuse of Smalltalk by a third party is not actionable under the Copyright Act. 17 U.S.C. §§ 411, 412 (1988).

11. Xerox did not expressly request declaratory relief under Counts II and III of the complaint. Xerox' claim in its memorandum that such a request is "implicit" in certain paragraphs of the complaint seems to indicate that it is seeking declaratory relief as an afterthought.

the fourth is not relevant. In any case, subsequent Supreme Court decisions have made it clear that the most important of these factors is whether Congress intended to create the private remedy asserted. *See Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1981); *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

A number of considerations militate against the conclusion that Congress intended courts to be in the business of cancelling copyrights. Viewing the Copyright Act as a whole, it is apparent that Congress intended that aggrieved copyright holders find their remedies exclusively in §§ 501–510. See Part II, *supra.* There is no indication in the legislative history that additional remedies are implicit in any other sections of the Act. *See generally* S.Rep. 94–473 (Nov. 20, 1975), H.R.Rep. 94–1476 (Sept. 3, 1976), and H.R.Con.Rep. 94–1733 (Sept. 29, 1976), *reprinted in* 5 U.S.Code Cong. and Admin.News, 94th Cong., 2d Sess. 5659 (1976). The fact that a plaintiff's ideal relief is not specified in §§ 501 *et seq.* does not give the courts license to grant such relief simply upon application by the plaintiff. In copyright law, remedies not provided are remedies not intended.

Finally, § 701 provides that "all administrative functions and duties under this title, unless otherwise specified, are the responsibility of the Register of Copyrights as director of the Copyright Office of the Library of Congress." Section 702 authorizes the Copyright Office to establish regulations for the administration of its functions and duties. Cancellation of copyrights is not "otherwise specified" as being outside the purview of the Copyright Office. Accordingly, that office has promulgated regulations relating to the cancellation of copyrights.[12] This court will not intrude at this juncture in matters under the jurisdiction of the Copyright Office. In addition, when the silence of the Copyright Act on the issue is compared to the Lanham Act's express provision, in the trademark context, for the sort of relief Xerox is seeking,[13] the court cannot presume that Congress intended to imply a similar remedy in the copyright context.

The cases relied upon by Xerox do not persuade the court that it should imply a new remedy. *Goodman v. Lee,* 815 F.2d 1030 (5th Cir.1987) and *Lieberman v. Estate of Chayefsky,* 535 F.Supp. 90 (S.D.N.Y.1982) merely hold that where a plaintiff's claim involves the interpretation of a definition in the Copyright Act (in these cases, the term "joint work"), such claim "arises under" federal law for purposes of 28 U.S.C. § 1338. *Royalty Control Corp. v. Sanco, Inc.,* 175 U.S.P.Q. 641 (N.D.Cal. 1972) is to the same effect, but involved the interpretation of the term "works for hire." In none of these cases did the court declare a copyright invalid as a first step toward ordering it stricken by the Copyright Office. In *United Christian Scientists v. Christian Science Board of Directors of the First Church of Christ, Scientist,* 616 F.Supp. 476 (D.D.C.1985), *aff'd,* 829 F.2d 1152 (D.C.Cir.1987), the district court found a *private* law granting a copyright to be unconstitutional as a violation of the Establishment Clause, and accordingly held that the copyright so conferred was "null, void, and of no effect." The court's action in *United Christian Scientists* is far different from Xerox' request to have this court first declare, without an "actual controversy," that Apple's presumptively valid copyrights registered pursuant to a valid, constitutional law are invalid and then order such copyrights stricken, all in the absence of express authorization by statute to do so.

---

**12.** 37 C.F.R. § 201.7(c) (1988). The declaration of Dorothy Schrader submitted by Xerox consists largely of legal conclusions and contains no facts that would tend to support Xerox' claims under Counts II and III.

**13.** 15 U.S.C. § 1119 provides: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."

### C. Counts IV and VI: Unfair Competition Under State Law and Unjust Enrichment.

■ In Count IV, Xerox alleges that Apple's actions constitute unfair competition and unfair business practices in violation of Cal.Bus. & Prof.Code §§ 17200 *et seq.*, and seeks both compensatory and punitive damages.[14] In Count VI, Xerox alleges that Apple has been unjustly enriched, and seeks a constructive trust under Cal.Civ. Code § 2224 requiring Apple to account for its benefits and pay them over to Xerox.

Xerox' state claims are preempted. 17 U.S.C. § 301 provides in part that:

all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title.

While Xerox' Star copyright comes within the definition of "audio-visual works," in § 102, Xerox has alleged no facts that render its rights under state law any more than the equivalent of rights under the Copyright Act. In order not to be equivalent, the right under state law must have an "extra element" that "changes the nature of the action so that it is *qualitatively different from a copyright infringement* claim." *Mayer v. Josiah Wedgwood and Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985). *See* M. Nimmer and D. Nimmer, Nimmer on Copyright § 1.01[B], at 1–12 to 1–13 (1989) ("[I]n essence a right which is 'equivalent to copyright' is one which is infringed by the mere act of reproduction, performance, distribution or display").

Xerox alleges that by "claiming title to that which actually belongs to Xerox, and by suing to enforce rights to that which actually belongs to Xerox, Apple has *caused such confusion* among others in the industry such as to dissuade them from dealing with Xerox." Complaint, ¶ 21 (emphasis added). This allegation is said by Xerox to provide the necessary "extra element" that saves the § 17200 claim from preemption.

The weakness in this claim lies in a misunderstanding of actionable "confusion." In order to state a claim under the California unfair competition statute, Xerox must show that there is a "likelihood of consumer confusion as to source or sponsorship," *Plasticolor Molded Products v. Ford Motor Co.*, 713 F.Supp. 1329, 1341 (C.D.Cal. 1989) (citing *Ball v. American Trial Lawyers Ass'n*, 14 Cal.App.3d 289, 92 Cal.Rptr. 228 (1971)). This confusion must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's. In other words, the defendant must be guilty of "passing off" his product as the plaintiff's. *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir.1986). This is not the sort of confusion Xerox alleges. Just as the unsuccessful plaintiff in *Fisher*, Xerox alleges that Apple is selling Xerox' work as its own. Xerox' theory, thus, is based upon the premise that Apple's products incorporate elements copyrighted by Xerox and misappropriated by Apple—unlawfully copied in violation of § 103(a) of the Copyright Act. This theory is the opposite of "passing off" and must necessarily be viewed as part of Xerox' copyright claim. Any such misappropriation must be redressed, if at all, under federal law.[15]

---

**14.** Damages are not available to private plaintiffs under the California unfair competition statute. In *Chern v. Bank of America*, 15 Cal.3d 866, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976), the California Supreme Court held that damages may not be recovered in an action under Cal. Bus. & Prof.Code § 17535. The Ninth Circuit relied on *Chern* to deny private plaintiffs the right to recover damages under § 17203. *Little Oil Co. v. Atlantic Richfield Co.*, 852 F.2d 441 (9th Cir.1988). *Accord, Dean Witter Reynolds v. Superior Court*, 211 Cal.App.3d 758, 259 Cal.

Rptr. 789, *modified,* 212 Cal.App.3d 193a (1989); *Industrial Indemnity Co. v. Superior Court*, 209 Cal.App.3d 1093, 257 Cal.Rptr. 655 (1989).

**15.** State law claims of unfair competition based on misappropriation of copyrighted material are preempted by the Copyright Act. *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987). On the other hand, to the extent that a state unfair competition statute is relied on as the basis for a tort of "passing off," it is not preempted. *Warner Bros.*

*Motown Record Corp. v. George A. Hormel & Co.,* 657 F.Supp. 1236 (C.D.Cal. 1987), provides further support for this view. Hormel produced a television commercial promoting its "Dinty Moore" brand canned beef stew which featured a trio of black women in sequined gowns and bouffant hairdos singing "Dinty Moore, My Dinty Moore" to the tune of the Motown classic "Baby Love" sung by Diana Ross and the Supremes. *Id.* at 1237. Motown contended that the use of the image of the Supremes without permission, together with the unlicensed use of the music, was likely to cause confusion and create a misimpression in the public and the trade that Motown authorized such use. Motown claimed that Hormel's conduct constituted unfair competition under Cal.Bus. & Prof. Code §§ 17200 *et seq.* and § 17500, adding various allegations to its copyright infringement allegations. The court found that Motown's state unfair competition claim was preempted, holding that Motown had failed to show that there was a "qualitative difference" between that claim and the copyright claim as required by *Josiah Wedgwood & Sons. Motown Record Corp.,* 657 F.Supp. at 1239.

This court finds that the essence of Xerox' state unfair competition complaint is Apple's alleged unauthorized use of Xerox' copyrighted work. Accordingly, Count IV is preempted. There being no remaining substantive state cause of action, Xerox cannot enjoy the benefit of the state law remedy of constructive trust sought in Count VI, and judgment on that count too is appropriate.

**D.** *Count V: Unfair Competition Under Federal Law.*

■ In Count V, Xerox seeks damages for Apple's allegedly false designation of origin and false description and representation in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[16] In essence, Xerox claims that "Apple markets the Lisa and Macintosh Finder works as its own,

whereas Xerox is the source of the works." This "incorrect designation of authorship" is said to constitute an actionable false designation of origin.

Section 43(a) of the Lanham Act has been called the "foremost federal vehicle" for the assertion of two types of unfair competition claims: false advertising and trademark infringement. 2 J. McCarthy, *Trademarks and Unfair Competition* § 27:2(C) (2d ed. 1984). *See also U–Haul International, Inc. v. Jartran,* 681 F.2d 1159, 1161 (9th Cir.1982) ("False statements of fact in a defendant's advertising concerning his product fit comfortably within the language of section 43(a)"). Both types of claims rest on the prohibitions against "false designation of origin" and "false description or representation." J. McCarthy, *supra,* at § 27:2(C). The test of liability is the likelihood of confusion: "Whether we call the violation [trademark] infringement, unfair competition or false designation of origin, the ultimate test is identical—is there a 'likelihood of confusion'?" *New West Corp. v. NYM Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979).

False designation and description may be achieved through "passing off," which involves selling a good of one's own production under the name or mark of another. "Express" passing off occurs when a business labels its goods with a mark identical to that of another enterprise or otherwise expressly misrepresents the origin of its goods. "Implied" passing off involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to represent by implication that the product being sold is made by the competitor. *Lamothe v. Atlantic Recording Corp.,* 847 F.2d 1403, 1406 (9th Cir. 1988). Express or implied "reverse" passing off occurs where the wrongdoer removes the trademark from a competitor's

*v. American Broadcasting Cos.,* 720 F.2d 231, 247 (2d Cir.1983). "Passing off" is the selling of a good of one's own creation under the name or trademark of another. *Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir.1981).

**16.** 15 U.S.C. § 1125(a) was revised effective November 16, 1989 by Pub.L. 100–667. The revi-

sion codifies the interpretations given by the courts to the previous § 1125(a), and was not intended either to limit or to extend applicable decisional law. S.Rep. 100–515,.at 40 (May 12, 1988), *reprinted in* 7 U.S.Code & Cong.Admin. News, 100th Cong., 2d Sess. 5577, at 5603–4 (1988).

product and sells the product under his own mark or sells it in an unbranded state. *Id.*

Xerox makes no allegations that Apple has engaged in any of these "standard" passing off practices or any others that have caused a "likelihood of confusion" as to which of Xerox or Apple produced Apple's products. Xerox does not allege that Apple falsely described its copyrighted material as Xerox's material. Nor is there any allegation that Apple falsely represented that Star was not a valid registration. All Xerox can complain of is that it has not been as successful with its Star copyright as Apple has been with its copyrights. Federal laws, of course, offer copyright holders no relief for commercial disappointment.

There are, moreover, no express allegations that Apple's Lisa or Macintosh Finder registrations are false, or that Apple engages in false advertising. Xerox does not even allege that Apple copied the Star work.[17] At most, by reading between the lines of the complaint, it appears that Xerox' position is that because Apple's copyrights ought to be invalidated, any use by Apple of such copyrights constitutes a violation of § 43(a) of the Lanham Act. Quite apart from the fact that any such alleged "falsity" would exist, if at all, at a level too far removed from the consumer to constitute a Lanham Act violation,[18] Xerox is putting the cart before the horse. The invalidity of Apple's copyrights needs to be

proven before their use can be deemed false and misleading. What Xerox would like, to paraphrase the Red Queen, is its "Verdict first, proof afterward!"

The Lanham Act cases cited by Xerox involved the omission of credit for an actual and contemporaneous co-author of the works at issue, *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403 (9th Cir. 1988); or misrepresentation of the extent of a person's contribution to the work at issue, *Gilliam v. American Broadcasting Cos.*, 538 F.2d 14 (2d Cir.1976); *Harlequin Enterprises Ltd. v. Warner Books*, 639 F.Supp. 1081 (S.D.N.Y.1986); *Follett v. New American Library*, 497 F.Supp. 304 (S.D.N.Y.1980); *Jaeger v. American International Pictures*, 330 F.Supp. 274 (S.D.N.Y.1971); *Geisel v. Poynter Products*, 283 F.Supp. 261 (S.D.N.Y.1968). In *F.E.L. Publications v. National Conference of Catholic Bishops*, 466 F.Supp. 1034 (N.D.Ill.1978), plaintiff alleged that defendants' unauthorized copying and distributing of plaintiff's copyrighted religious music booklets infringed such copyrights and created a false impression as to the source of the material. This was essentially a "reverse passing off" claim, where plaintiff alleged that its product was represented to be defendants'. Based on these cases, it would appear that Xerox' position is that it is a constructive author of the Apple works, or an author by implication, based on the alleged "overlap" between Apple's Lisa and Macintosh Finder and Xerox' Star.[19] This is far too tenuous a theory to

---

17. Xerox only alleges that Apple's copyright registration "claims Lisa to be an original work of Apple," and that the Lisa deposits "depict and describe substantial portions which are original to STAR," Complaint, ¶ 14; that Apple's Macintosh Finder deposits "depict and describe substantial portions which are original to STAR," Complaint, ¶ 15; and that Apple's Lisa and Macintosh Finder copyright registrations "overlap Xerox's STAR registration and incorporate portions of STAR and SMALLTALK thereby claiming originality and ownership of material in Apple which is actually based upon and derived from Xerox." Complaint, ¶ 16.

18. That is to say, if Apple represented to consumers that it held copyrights when in fact it did not, it would violate § 43(a). However, Apple does hold copyrights. It would hardly be an appropriate function of the Lanham Act to punish a copyright holder for asserting that it holds a presumptively valid copyright. *See Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402

F.Supp. 838, 847 (E.D.N.Y.1975), *aff'd*, 538 F.2d 314 (2d Cir.1976) ("There can be no 'falsity' about [a] patent; its existence is a fact and by law it must be presumed valid until its invalidity is established by a party contesting it."). *Tubeco* is equally applicable in the copyright context. If Apple were found to have infringed Xerox' copyright, there might be some basis for Xerox to claim that advertising statements by Apple to the effect that Apple was the originator of the infringed idea are actionable under the Lanham Act.

19. Xerox depends *too* heavily on allegations of "overlap." If the registration of a copyright meant that no element of the registered work could ever be incorporated in work by later creators, the world would long ago have run out of copyrightable work. *See Atari Games Corp. v. Oman*, 888 F.2d 878, 882–883 (D.C.Cir.1989).

support finding a federal false advertising violation on Apple's part. If Apple copied material that Xerox created, Xerox should bring a copyright infringement action.

Viewed in the most favorable manner possible, Xerox' allegations simply do not support a claim under § 43(a) of the Lanham Act. The court cannot conclude based on the complaint that Apple's alleged actions have resulted in a "likelihood of confusion" whether Xerox or Apple is the producer of either the Star or Lisa/Macintosh works.

Apple's motion for judgment on the pleadings is GRANTED as to Counts II, III, IV, V and VI.

### IV. XEROX'S REQUEST FOR SANCTIONS.

The last page of Xerox' memorandum of points and authorities in opposition to Apple's motion consists of a request for Rule 11 sanctions on the grounds that Apple's positions in its motion were meritless. It is especially inappropriate for the party which seeks, in this case unsuccessfully, to extend the law of copyright to characterize as "meritless" the efforts of the opposing party to adhere to received principles. Rule 11 sanctions are not meant for vigorous legal orthodoxy.

Xerox' request for sanctions is DENIED.

### V. MODIFICATION OF STAY OF DISCOVERY.

In order for the parties to proceed in accordance with the foregoing, IT IS HEREBY ORDERED that the stay of discovery entered on January 31, 1990 by the Honorable William W Schwarzer be modified in the following respects:

(1) Xerox shall have until April 27, 1990 to produce to Apple all documents in its possession and a list of potential witnesses that would support a "real and reasonable fear of liability" on its part caused by Apple's actions;

(2) Apple shall have until June 22, 1990 to take discovery related to such documents and witnesses and shall have until July 20, 1990, to file a submission in support of summary judgment as to Count I;

(3) Xerox may respond to Apple's submission or supplement its prior opposition by August 24, 1990.

(4) Apple may serve and file a reply to Xerox' response, if any, by August 31, 1990.

A hearing on Count I will be held on September 7, 1990, at 11:00 A.M. The court will consider the papers submitted in accordance with the above-outlined steps along with the papers heretofore submitted and shall treat Apple's motion for judgment on the pleadings as a motion for summary judgment with respect to Count I of Xerox' complaint.

IT IS SO ORDERED.